Daniels, J.
The success of the application depends upon the determination of the point whether the treasurer is entitled for himself or the county to fees for receiving and paying out moneys passing through his hands in the course of legal proceedings. They are paid over to him as the depository of the court, and disbursed again in compliance with its orders. The moneys received and disbursed are in no sense public funds, but they belong to parties interested in legal controversies, for whose security they are received, held, and finally paid out. This service, under the preceding system of practice, was commonly performed .by the register in chancery, and for that certain definite fees were provided and allowed (2 R. S. 2 ed. 522). When that sys-' tern was abolished these moneys were transferred to the custody of the clerk of the court of appeals. And by the next change, which was soon afterwards made, they were required to be paid over to, and held and disbursed by, the county treasurers, of the different counties of the State, excepting that of the county of New York (L. 1848, c. 277). Tñese laws made no provisions changing the rate of compensation adopted for the performance of the service required. But the former fees of the register in chancery were continued as the allowances to which the treasurers were entitled (L. 1848, 406, § 4). In 1849 this compensation was changed, and by the change made it was designated a commission of one-lialf of one per cent, on every dollar received, and one-half of one per cent, on every dollar paid out, of the moneys received and held by the treasurer, by virtue of the authority created by the preceding act (L. *410 1849, c. 357.) The compensation of the treasurer of Erie county for receiving, keeping, and paying out such moneys, remained the same until the year 1877, when it is claimed these commissions were abolished by a provision declaring that the treasurer should subsequently receive an annual salary to be fixed by the board of supervisors. And that he should not receive to his use any interest, fees, or other compensation for his services, except in proceedings for the sale of lands for unpaid taxes, as was then provided for by law (L. 1877, p. 494, c. 536, § 5).
In order to understand the full scope and intent of this provision it is necessary to examine others contained in the act. For the intent of a particular provision of law is not always to be derived from that alone in terms relating to the subject in controversy. Where evidence of what it may be can be found in other portions of the law, they may be and should be, consulted, for the purpose of discovering its nature and extent. By such an examination of this act it appears from its preceding provisions that it was designed to affect “ all moneys received ’ ’ by the treasurer. And this language is sufficiently comprehensive to include private or individual funds, as well as public moneys. And that it was designed to be so understood, has been made further evident by the provision following, which declares that nothing in the section containing it “ shall limit the power of any court or officer, by whose direction any moneys shall be paid over to, or received by, such treasurer; to direct in relation to the custody or investment thereof, or of the disposition to be made of the interest thereon ; and no interest received from any moneys so deposited, which are not received for some public use, shall belong to such county” (Id. 493, § 1). This declaration would have been inappropriate if the preceding phrase was not intended to include all *411 moneys, whether public or private, received by the treasurer.
This design has been still further licensed by the following sections. For they provide that the bond to be taken, by the treasurer, from the depository designated by him, pursuant to the first section, shall be conditioned not only for the safe keeping of the money, payable on the order of the treasurer, but that it shall also extend to the money payable upon other lawful authority, which would plainly include the orders of the court, relating to the disposition of private or individual funds. The distinction is still further manifested, by the restraints imposed upon the drawing of the money deposited. That can only be done either for the payment of claims ordered to be paid by the board of supervisors, or other lawful authority, or pursuant to the lawful direction of some court (Id. §§ 2, 4). These portions of the act render it reasonably plain, that it was intended by means of its provisions that it should include all the moneys payable to the treasurer, as well those belonging to individuals, as those strictly public in their character. And as to all alike, the persons and duties of the treasurer were intended to be declared and defined by virtue of its provisions. Both descriptions of funds are clearly designated, and the modes in which they may be paid out are respectively defined. The object of the act was to provide for the safe keeping and disbursement of all the moneys received by the treasurer, whether derived from public or private sources. And after making the provisions deemed requisite for that purpose, that which relates to his compensation was added. In the enactment on that subject nothing was inserted indicating that it was to relate to one, and not the other, of these classes of funds. And the presumption would be, from what had been previously declared and rendered the subject of legislative consideration, that *412 the following provision would be designed to be as broad as those rendering it necessary to complete the enactment. It cannot reasonably be supposed, after defining generally what the treasurer was to do concerning the funds passing into his hands, that in making provision for his compensation, a portion only of his services would be included. To warrant such an inference would require something disclosing the existence of the purpose to make the compensation partial, instead of complete. The section of this act contains nothing of that kind. But it declares that the treasurer shall receive an annual compensation for his services. Not for a portion of his services, but for the services required to be rendered by him, .and which have formed the subject of previous consideration, including all those appertaining to the receipt, safe keeping and disbursement of public and private funds. And to render this intention more plain and emphatic, the negative provision was added, that he shall not receive to his use any interest, fees, or other compensation for his services. The exception was then made, from this general prohibition of the sale of lands for unpaid taxes. This prohibition exercises an important influence over the subject affected by it. For the exception annexed to it warrants the conclusion that only the fee, which was itself expressed was intended to be made, from the general nature of what had already been declared on the subject of the treasurer’s compensation.
But the fact that the act has in this manner limited the compensation of the treasurer, will not entitle the applicant to the money in dispute. For he has not been prohibited from charging the fees previously provided for the performance of the service ; but only that he shall not receive them for his own use. The right to fees for the services performed for individuals has not been taken away, nor abolished. It is entirely *413 proper that they shall be charged for the public services specially required to be performed in their behalf. It is a burden which they alone should bear. And no reason exists for transferring it from themselves to the county. Accordingly, while the treasurer may not exact fees for his own uses, as the commissions provided by the act of 1849 have not in any way been abolished or abrogated, he must still receive them, and then apply them to the use of the county. The restriction in terms is no more than that the treasurer shall not receive fees to his own use ; not that he shall not receive them at all, which would be essential to their abrogation. Its language contemplates that those previously provided for shall still be charged and retained, and then, as no other disposition has been made of them, the treasurer being forbidden to take them himself, it necessarily follows that they must be added to the moneys of the county, for the services of whose officer they have been imposed.
The inability to retain the fees may produce injustice to the treasurer, as his salary was probably based upon a different understanding of this act. But that result cannot be permitted to change its meaning and import. It will, however, be a subject for the board of supervisors to consider upon the adjustment of the accounts created by these fees. And in that way a proper remuneration will still, undoubtedly, be made for these services of the treasurer. But that is a subject over which the court has no control. It is a matter solely for the board of supervisors to declare what shall be done to meet the demands of such a contingency.
It has been urged that the treasurer has been concluded by the form of the order entered, from disputing the right of the applicant to the moneys retained for these fees. If that is the case the order ' was not entered as it was designed it should be, and to *414 avoid all possibility for future misunderstanding, it will be corrected by excepting from its requirement for payment, the fees or commissions allowed to be charged and retained by law. And, with that addition, the motion will be denied, without costs.